# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:18-CV-00032-DSC

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND ORDER** |
| v. | ) |
| | ) |
| LENOIR-RHYNE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the Defendant's "Motion to Dismiss," Doc. 6 filed March 23, 2018 and the parties' associated briefs and exhibits, Docs. 6-1, 13 and 17. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the Court will grant in part and deny in part Defendant's Motion to Dismiss, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Plaintiff, a citizen of England, was a scholarship athlete at Lenoir-Rhyne University beginning in the fall of 2014. On January 24, 2015, Plaintiff was sexually assaulted in student housing by another scholarship athlete, Andrew Bruce. Following the assault, Plaintiff's friends immediately contacted the Resident Assistant (the "RA") in her dormitory. The RA contacted the Resident Director (the "RD") and then recommended that Plaintiff get some rest. Around 3:36 a.m., the RD woke Plaintiff, questioned her, and conducted a room search. The RD instructed Plaintiff to return to bed. Due to the severity

of her injuries, including uterine bleeding, Plaintiff went to Frye Regional Hospital. The hospital contacted police upon learning that Plaintiff was the victim of a sexual assault. Defendant failed to contact police about this assault.

Plaintiff suffered physically and psychologically as a result of the assault and was unable to perform well as a student. She requested reasonable accommodations from Defendant but was refused. She eventually lost her scholarship and returned to England.

Prior to January 2015, Defendant had knowledge that Bruce was implicated in two sexual assaults on campus. Defendant took no measures to remove Bruce from student housing or the campus.

In its Motion to Dismiss, Defendant argues that Plaintiff's claims for gross negligence, negligent infliction of emotional distress, breach of implied warranty of habitability, violation of Title IX of the Educational Amendments Act of 1972 and breach of contract should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

B. **Title IX Claim**

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In Davis v. Monroe County Board of Education, the Supreme Court found that Title IX's prohibition on sex-based discrimination encompasses student-on-student sexual harassment where the school "is deliberately indifferent to known acts of student-on-student harassment and the harasser is under the school's disciplinary authority." 526 U.S. 629, 646–47 (1999). The Court held that "funding recipients are properly liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650. Thus, to prove a Title IX claim on the basis of student-on-student sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds; (2) she was subjected to harassment based upon her sex; (3) the harassment was so severe, pervasive, and objectively offensive that it created a hostile or abusive educational environment; and (4) the educational institution had actual knowledge of the harassment but was deliberately indifferent. See Davis, 526 U.S. at 650; Rouse v. Duke Univ., 535 F. App'x 289, 293 n.* (4th Cir. 2013)(per curiam)(unpublished); Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc).

The Fourth Circuit requires that the institution have actual knowledge of harassment against the plaintiff. Alleged knowledge of prior acts of sexual harassment against other students is insufficient to establish liability. Baynard v. Malone, 268 F.3d 228, 238 (4th Cir. 2001); see also Facchetti v. Bridgewater College, 175 F. Supp.3d 627, 639 (W.D. Va. 2016) ("[Plaintiff] cites to a number of cases for the proposition that prior harassing conduct need not be 'plaintiff specific'

or involve the same perpetrator that assaulted the plaintiff for a university's deliberate indifference to prior complaints to result in Title IX liability.... In the Fourth Circuit, though, there is a requirement that the defendant have actual notice of harassment against the plaintiff."). A university's knowledge of prior sexual misconduct by the same assailant with other students or of potential abuse is insufficient to establish a Title IX claim. Id.; See also Rasnick v. Dickenson Cty. Sch. Bd., 333 F.Supp.2d 560, 566 (W.D.Va.2004) (although noting that Baynard is the minority view, granting summary judgment for defendant on Title IX claim because court was bound to do so by Baynard where plaintiff failed to establish actual notice, despite knowledge that the same teacher had engaged in instances of inappropriate behavior in prior school years); Ray v. Bowers, 767 F.Supp.2d 575, 581 (D.S.C. 2009) (granting summary judgment for college on Title IX claim despite the college's knowledge of prior complaints against a harassing professor, because Baynard required plaintiff to show that the college had knowledge of harassment by the professor against the plaintiff, and it did not have such notice until the plaintiff reported him); Johnson v. Galen Health Insts., Inc., 267 F.Supp.2d 679, 687–88 (W.D.Ky.2003) (noting that while some district courts in the Sixth Circuit have held that the notice need not be plaintiff-specific, the Fourth Circuit has required "a showing that school district officials possessed actual knowledge of the discriminatory conduct in question").

    Here Defendant argues that Plaintiff's Complaint fails to state sufficient factual allegations to show that Defendant had actual knowledge of the harassment. Plaintiff contends that Baynard does not apply here because the U.S. Department of Education Office for Civil Rights changed its policies in an April 4, 2011 "Dear Colleague Letter." The Court disagrees. The issuance of guidance by an agency does not supersede the established law of this Circuit. Other cases in the Fourth Circuit since the "Dear Colleague Letter" was published have followed the standard set

forth in Baynard. See Facchetti v. Bridgewater Coll., 175 F. Supp. 3d 627, 639 (W.D. Va. 2016); Dunlap v. Monroe Cty. Bd. of Educ., No. CV 1:16-11535, 2017 WL 4684181, at *4 (S.D.W. Va. Oct. 18, 2017).

There is no allegation that Bruce previously assaulted or harassed Plaintiff. Therefore, under the more stringent test of Baynard, there is insufficient notice to impose liability on Defendant. For this reason, the Court grants Defendant's Motion to Dismiss Plaintiff's Title IX claim.

### C. Breach of Implied Warranty of Habitability Claim

By the enactment in 1977 of the Residential Rental Agreements Act, N.C.Gen.Stat. Secs. 42–38 et seq., the North Carolina legislature implicitly adopted the rule that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation. The implied warranty of habitability is co-extensive with the provisions of the Act. Miller v. C.W. Myers Trading Post, Inc., 355 S.E.2d 189, 192 (1987). A landlord shall "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition" and to "keep all common areas of the premises in safe condition." N.C. Gen.Stat. § 42-42(a)(2) and (3). "Tenants may bring an action for breach of the implied warranty of habitability, seeking rent abatement, based on their landlord's noncompliance with their obligations under the statute." Miller, 355 S.E.2d at 193.

Plaintiff argues that Defendant allowed a known serial sex offender to remain in a coed dormitory without warning the residents, thus rendering the premises unfit for habitation. The implied warranty of habitability applies to the condition of the premises. Plaintiff has failed to show that any conditions of the premises were unfit for habitation. Rather she alleges that a third party on the premises was dangerous. North Carolina law does not support a claim for breach of

the implied warranty of habitability based upon the criminal acts of a third party. Consequently, the Court grants Defendant's Motion to dismiss the breach of implied warranty of habitability claim.

### D. Breach of Contract Claim

Breach of contract requires the "(1) existence of a valid contract and (2) breach of the terms of that contract." Parker v. Glosson, 641 S.E.2d 735, 737 (N.C. App. 2007). A contract exists only where there is mutual intent to contract and agreement on sufficiently definite enforceable terms. McFayden v. Duke Univ., 786 F. Supp. 2d 887, 981 (M.D.N.C. 2001), *aff'd in part, rev'd in part on unrelated claims, dismissed in part*, 703 F.3d 636 (4th Cir. 2012). In the educational context, the North Carolina Court of Appeals has recognized that a student can, in some circumstances, bring a claim against a college or university for breach of contract. See Ryan v. Univ. of N.C. Hosps., 494 S.E.2d 789, 790 (1998). However, the plaintiff must "point to an identifiable contractual promise that the [defendant] failed to honor" and the claim must not involve "inquiry into the nuances of educational processes and theories." Id. at 791. Therefore, "'not all aspects of the student/university relationship are subject to a contract remedy' and it is a plaintiff's obligation to point to a mutual agreement with sufficiently definite terms or obligations." McFadyen, 786 F. Supp.2d at 982 (quoting Hendricks v. Clemson Univ., 578 S.E.2d 711, 716 (S.C. 2003)).

Defendant argues that Plaintiff's breach of contract claim does not meet the pleading standards established by Iqbal. The Court agrees. Plaintiff alleges that she "is not in possession of the writing upon which this contract is memorialized if even it has been so memorialized. If such writing exists, Plaintiff believes, and therefore avers, that LRU is in possession of the same." Doc. 1-1 at ¶99. Plaintiff cannot allege breach of contract when she does not know if a contract exists. Furthermore, Plaintiff's allegations are threadbare recitals of the elements of a breach of contract

claim and supported by mere conclusory statements. Therefore, the Court grants Defendant's Motion to Dismiss Plaintiff's breach of contract claim.

### E. Negligent Infliction of Emotional Distress ("NIED")

To state a claim for NIED, plaintiff must allege that defendant (1) negligently engaged in conduct, (2) which was reasonably foreseeable to cause severe emotional distress and (3) the conduct did, in fact cause severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990). "The touchstone for whether a plaintiff may recover for NIED is whether 'the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and foreseeable result of the defendant's negligence.'" Gardner v. Gardner, 435 S.E.2d 324, 327 (N.C. 1993) (quoting Ruark, 395 S.E.2d at 97).

The Court finds that at this stage of the proceeding, Plaintiff has stated a plausible NIED claim. Plaintiff pled that Defendant owed her a duty to provide safe student housing and to warn of any known dangers that could adversely affect her physical safety and well-being. Doc. 1-1 at ¶ 67-68. Plaintiff also pled that Defendant knew that Bruce was a serial sexual offender and posed an unreasonable risk of danger to other women. Id. at ¶ 70. Plaintiff also pled that it was foreseeable to Defendant that Bruce would continue to pose a danger to Plaintiff and other students living in on-campus housing. Id. at ¶ 71. In spite of this foreseeable danger, Defendant failed to act. Plaintiff was assaulted and suffered severe emotional distress. Id. at ¶ 72. The Court finds that these allegations are sufficient to withstand dismissal under Rule 12(b)(6) and denies Defendant's Motion to Dismiss Plaintiff's NIED claim.

### F. Gross Negligence Claim

A claim for gross negligence requires a showing that: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) the breach was a proximate cause of injury; (4) plaintiff was

injured as a result thereof; and (5) defendant's conduct was willful, wanton, or done with reckless indifference." Sawyer v. Food Lion, Inc, 549 S.E.2d 867, 870 (N.C. App. 2001). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. App. 2001). "The difference between negligence and gross negligence lies in the intentional or deliberate character of the actions of the defendant that are done purposefully and with the knowledge that the action is a breach of duty to plaintiff." Simpson v. Amylin Pharm., Inc., No. 1:11CV301, 2012 WL 3240054, at *2 (W.D.N.C. Apr. 9, 2012)(citing Yancey, 550 S.E.2d at 157).

The Court finds that Plaintiff has stated a plausible gross negligence claim. In addition to pleading Defendant's knowledge of Bruce's history and the dangers he posed to women on campus, Plaintiff alleges its complete failure to report the sexual assault to law enforcement.

Defendant argues that Plaintiff has simply re-packaged her negligence claim and labeled the same conduct as willful and wanton. However, because all reasonable inferences must be drawn in Plaintiff's favor at this stage, the Court finds that these allegations are sufficient to withstand dismissal under Rule 12(b)(6) and denies Defendant's Motion to Dismiss Plaintiff's gross negligence claim.

### III. ORDER

**FOR THE FOREGOING REASONS**, Defendant's "Motion to Dismiss," Doc. 6, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Title IX, breach of implied warranty of habitability and breach of contract claims are dismissed with prejudice.

The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: August 28, 2018

David S. Cayer
United States Magistrate Judge